Hardin, J.
It is provided by section 135 of the Code, that “where the person on whom service of the summons is to be made cannot, after due diligence, be found within the State, and that fact appears by affidavit to the satisfaction of the court, or a judge,” &c., an order for publication of the summons may be made in certain cases provided for by the subsequent provisions of the section. The order in this case must be set aside, be *414 cause the papers upon which it is founded do not conform to the requirements of the statute.
There is no diligence shown to have been made to find the defendant, within the State.
The certificate of the sheriff of Montgomery is wholly defective. He may have been “credibly informed that the defendant had left the State,” and still the defendant may have been within his county, and so circumstanced as to be found, upon the exercise of “due diligence.” (41 Barb. 549.)
Besides, the certificate of the sheriff is not the proof required by the section.. The fact'of “ due diligence” must appear by affidavit to the satisfaction of the court.” The facts should be shown from which the court can judicially determine that due diligence has been exercised.
The certificate is wholly defective, and is not a proper substitute for the affidavit required by the statute. (17 Abb. 66. 41 Barb. 549. 45 id. 398.)
The defect already pointed out must lead to granting the motion.
The plaintiff, upon the argument sought to uphold the order, under the second subdivision of section 135, which is as follows: “Where "the defendant, being a resident of this State, has departed therefrom, with intent to defraud his creditors “or to avoid the service of a summons,” &c.
The affidavit in this case, upon information and belief only, contains these words, as to the defendant, to wit: “Departed from this State, with the intention of evading the service of summons upon him.” The language of the statute provides for a case where a party seeks “to avoid the service”—not when the departure is to evade.
It was insisted by the defendant’s counsel that this action is not one on which a publication could be allowed under the 5th subdivision of section 135. It is insisted that an action for separation does not come *415 within the language of subdivision 5, which is, “when the action is for divorce, in the cases prescribed by law.” The Revised Statutes are quoted, which prescribe, first, in what cases a divorce may be granted, as for adultery, fraud, &c.; and, second, in what cases a separaration may be decreed by the court.
Prior to 1787 courts of this State did not have jurisdiction in divorce cases, but the relief was obtained by an act of the legislature. At first, upon some general principles of equity, courts interfered, and at last came statutory provisions for divorce and for separation. It must be conceded that the statutory cases are “the cases prescribed by law,” referred to in subdivision 5 of section 135. The question then comes to us, to what the words of subdivision 5 of section 135, “when the action is for divorce,” mean. In the common utterance of the profession, the word divorce has been used to embrace both “divorce and separation;” and in many opinions, delivered by the most eminent jurists of this State, for the last fifty years, the word divorce has been used when referring to cases of separation. (See op. of Chancellor Kent, 4 John. Ch. 501; op. of Rapallo, J., 49 N. Y. 139.) The revisors, in preparing the Revised Statutes, prefix to the article providing for cases of separation, the words “of separation or limited divorce," in which the use of words is made which evinces the intention to express by the words, or “limited divorce,” the same idea as that conveyed by the word separation.” By looking at Burrill's Law Dictionary, (vol. 1, p. 388,) it will be found that the words of the text books, viz., “ Divorce a mensa et thoro," are defined to be equivalent to a “ divorce from table and bed, or from bed and board.” And again it is called “a qualified divorce.” Such is the use made by Kent of the words, and vice versa of the words “qualified divorce.” (2 Kent's Com. 125. 4 John. Ch. 501, op. of Kent, Ch., in 1820.) Bracton uses the term separatio thori in contra-distinc *416 tion from divorce a vinculo. Subsequent to the use of the word divorce in the double sense named above, the legislature adopted subdivision 5 of section 135, in 1849, and the word “ divorce” was used, it must be presumed, in the largest and most common sense then prevailing. The word had, in 1849, come to be used to designate that judicial interference with the marriage contract which either provides for a total or partial separation of the parties to it—that authorization to them by the court to go different ways, either forever or temporarily. The word “divorce,” as used in the section, seems to embrace the sense in which it is used in the common phrase or every day language of the profession. There cannot be found, in the nature, of the actions for one cause, any good reason why the rule which permits publication of summons in the one case should not prevail in the other; and it seems most reasonable to suppose the intent of the legislature was to permit it in cases for strict separations, as well as in cases where the remedy was sought which should effectuate an absolute annulling of the marriage contract.
[Oneida Special Term,
October 29, 1872.
Hardin, Justice.]
But the question need not be pursued further in this case; for the other points involved in the motion lead .to the granting of the motion.
The order of publication and proceedings founded thereon must be set aside.
Motion granted.