JOSEPH J. SLOCUM and Another v. JAMES McLAREN.[1]

January 8, 1909.

Nos. 15,815—(166).

**Tax Certificate—Redemption Notice.**

In an action to determine the validity of a tax title, it is *held*:

**Delivery to Auditor.**

That there was no evidence that the holder of the tax certificate presented it to the auditor, in order that notice to eliminate redemption should be issued, does not invalidate the notice.

**Notice Sufficient.**

A notice was not legally insufficient because it stated that the amount required to redeem was a named sum, "with interest on said sum at 12 per cent. [since a named date], exclusive of the costs to accrue upon this notice."

**Delivery of Notice.**

The notice was not invalidated because there was no proof that the auditor delivered the notice to the person holding the certificate, or that such person ever delivered the notice to sheriff for service.

**Return of Service.**

The return of service is *held* to be of prima facie validity, notwithstanding a number of irregularities.

Action in the district court for Swift county to quiet title. The defendant claimed title under a sale of the land for taxes delinquent for the year 1897. The case was tried before Qvale, J., who made findings and ordered judgment in favor of defendant. From a judgment entered pursuant to such order, plaintiffs appealed. Affirmed.

The form of the sheriff's return upon the notice of expiration of time to redeem is given in the opinion.

*Lyndon A. Smith* and *Owen Morris,* for appellants.

G. S. 1894, § 1654, does not say that if the sheriff after diligent search is unable to find, but says if the party "cannot be found." The sheriff here nowhere states that the party cannot be found. He does not even state that he has made inquiry. It was his duty to inquire.

[1] Reported in 119 N. W. 406.

A man may quietly search and fail, while proper inquiry would enable him to succeed. Inquiry might also divulge the information that the party was not a resident of the state and never had been a resident thereof, and that he had no home in the state or in the county where the land is situated.

Section 1654 makes the return of the sheriff prima facie evidence as a foundation of substituted service by publication. The statute as to summons requires that this appear by return of the sheriff that the defendant "cannot be found" in the county, and upon the filing of an affidavit by the plaintiff or his attorney stating that he believes that the defendant is not a resident of the state or cannot be found therein, and that he has mailed a copy of the summons to the defendant at his place of residence, or states that the place of residence is not known to him. The return of the sheriff, therefore, in section 1654 takes the place of both the return and the affidavit in section 5204. The legal presumption in favor of the acts of a sheriff does not go to the extent of supplying the omissions of a statement in a return which, by statute, is necessary to its sufficiency, and every act which the statute requires as a part of the service must be set out in the return. Dawson v. State Bank, 3 Ark. 505; Noleman v. Weil, 72 Ill. 502; Richards v. Ladd, 6 Sawy. 40, 42. It is fair to infer everything against a return which its departure from the statute will warrant. Blanton v. Jamison, 3 Mo. 52; Swetland v. Stevens, 6 Vt. 577; Diltz v. Chambers, 2 Green (Iowa) 479; See Carnes v. Mitchell, 82 Iowa, 601, 605; Mackubin v. Smith, 5 Minn. 296 (367).

*S. H. Hudson,* for respondent.

The direction that the notice shall be served in the manner prescribed for the service of a summons in the district court, applies only to the manner of serving, that is personally, or by leaving copy as statute prescribes. This direction has nothing to do with the manner of return or proof of service, nor with the requisites for substituted service by publication. Mackubin v. Smith, 5 Minn. 296 (367) has not been an authority in this state since 1864 by reason of the change in the statutes. Easton v. Childs, 67 Minn. 242.

JAGGARD, J.

This is an action, in form to quiet title, to determine the validity of a tax title. Pursuant to State v. Sage, 75 Minn. 448, 78 N. W. 14, judgment for taxes was entered against this tract of land and several others. Payment of the taxes on the tract involved was inadvertently overlooked. Under the proviso of section 1591, G. S. 1894, under tax judgment, this tract was sold the latter part of April, 1899, a few days prior to the regular sale in the beginning of May of that year. August 20, 1907, a notice of expiration of time of redemption was issued by the county auditor, and the same was pretended to be served by the sheriff August 21. The trial court held the tax title valid. This appeal was taken from the judgment entered thereon in favor of the defendant. The controversy concerns the sufficiency of the notice of expiration of time of redemption. ·

1. Appellants contend that no evidence was adduced to show the presentation of the certificate by its holder to the county auditor under section 1654, G. S. 1894, and that this avoids the notice. Lawton v. Barker, 105 Minn. 102, 117 N. W. 249, decided this point adversely to plaintiff.

2. It is more strenuously argued that the notice does not state the amount required to redeem the land, exclusive of the costs to accrue upon notice. After stating that judgment had been entered against the land, and that the land had been sold, the notice runs: "For the sum of Forty nine Dollars and Forty seven Cents, that being the amount of taxes, penalties, interest, and costs due on said land" for the stated year. The notice then sets forth that the amount required to redeem said land from said sale is $49.47, with interest on said sum at 12 per cent. since the said 24th day of April, 1899, exclusive of costs to accrue upon redemption.

In Midland Co. v. Eby, 89 Minn. 27, 93 N. W. 707, it was said that the least objectionable and most practicable method of stating the amount "is that which authorizes the auditor to state the total sum due on the day the notice is dated and issued, as the amount required to redeem. When redemption is made, interest may be added up to that time, and if, in the meantime, unpaid delinquent taxes have accrued, the amount thereof may be added to that stated in the notice. The statute itself enters into the transaction, and the land-

owner, or the party redeeming, knows that it exacts payment of the interest up to the time redemption is actually made, and in addition, all unpaid delinquent taxes accruing subsequent to the date of the notice. This rule will make the amount to be specified in the notice definite and certain. The party on whom such a notice is served will know—as he is presumed to know the statute—that interest must be paid up to the time of the actual redemption, and also that if taxes become delinquent subsequent to the date of the notice, and before he redeems, it is incumbent upon him to discharge them."

We are of the opinion that, while this notice did not literally, it did substantially, conform to this rule. The expression "and with interest on said sum at 12 per cent." is not rendered uncertain by the absence of the words "at the rate of" or "per annum." Their omission could have misled no one. The initial date was fixed. The notice did not expressly state, as the statute requires, that interest should be computed "up to the day such redemption is made." The redemptioner necessarily knew this. To have said so in the notice would have saved him no trouble and have added nothing to his information. The only question of any moment is whether the absence of the calculation up to the date of the notice avoids it. It is to be noted that in this case the proceedings involve no delinquent or unpaid taxes, or taxes previously paid by the certificate holder, which were sought to be tacked to the amount of sale on which the notice was to be calculated. It is not possible for the notice to state the exact amount to be paid at the time of actual redemption, because that time is not known and cannot be known until such time arrives. The most that can be done is to state the amount due at a certain time and the rate of interest, so that the certain calculation may be made at the time of redemption by the person entitled to redeem. This was done in this case. That is certain which can be made certain. Given the facts stated in this notice, in its own words, any grammar school child could have made the calculation.

3. That there was no proof that the auditor delivered the notice to the person applying therefor, as required by statute, does not invalidate the certificate. The reasoning on the first point essentially necessitates this conclusion.

4. That there was no proof that the person holding the tax certi-·

ficate ever delivered the notice to the sheriff for service and return does not invalidate the certificate, for the same reason. Mueller v. Jackson, 39 Minn. 431, 40 N. W. 565, on careful reading, will be found to be not inconsistent with this conclusion.

5. The sufficiency of the return of the sheriff is the most doubtful question in the case. That return was as follows:

"State of Minnesota
County of Swift, ss.

"I, John McShane, sheriff of Swift county, do hereby certify that after diligent search I have been unable to find the within named Russell Sage within my county, and that on the 21st day of August, 1902, I served the within notice upon M. Rudnick and Joseph Blahoski, Rudnick was in possession of the N. W. ¼, and Blahoski had possession of the S. W. ¼, of the land in said notice described, by handing to and leaving with each of them personally a true and correct copy of the within notice.          John McShane,
     "Dated August 21, 1902.          Sheriff of Swift County."

The statute provides that the sheriff's return is prima facie evidence of the manner of service, and that "such service shall be made in the manner prescribed for the service of summons in a civil action in the district court. If the person named in such notice cannot be found in the county and there be any person in the actual possession of the land in such notice described, the same shall in like manner be served upon him." The return in this case was not that the person named in such notice cannot be found, but that "after diligent search I have been unable to find such person within my county." It is plain that "my county" refers to Swift county, for the venue is laid in Swift county. The person certifying is described in the certificate as sheriff of Swift county, and signs it as sheriff of Swift county. The substance of the controversy is whether inability to find after diligent search is equivalent to "cannot be found."

The return does not exclude the possible hypothesis that the person might be within the county, although the sheriff's search had not resulted in finding him. But if, after having made the identical search he made in this case, the sheriff had stated that the person "cannot be found," his return would have been valid. The prac-

tice followed in this case was in harmony with that in vogue in New York. Peck v. Cook, 41 Barb. 549; Easterbrook v. Easterbrook, 64 Barb. 421; Wortman v. Wortman, 17 Abb. Pr. 66. The statute does not contemplate details of the effect to find, but only the conclusion should be stated. Cf. Sueterlee v. Sir, 25 Wis. 357; Young v. Schenk, 22 Wis. 530; Matthews v. Miller, 47 N. J. L. 414, 1 Atl. 464; Swain v. Chase, 12 Cal. 283; Braly v. Seaman, 30 Cal. 611. The return is plainly different from a defective statement that the sheriff had been "unable to serve." Van Rensselaer v. Dunbar, 4 How. Pr. 151. The contention based on Mackubin v. Smith, 5 Minn. 296 (367) is disposed of by Easton v. Childs, 67 Minn. 242, 69 N. W. 903. Current practice in this state has treated a return "that after diligent search [the sheriff] am unable to find" as sufficient, because, if he is unable to find, it is the same thing as saying he cannot find. In view of these considerations, and the presumption of official regularity, we are constrained to hold the return valid in this respect. In reaching this conclusion we have rejected the argument that the court might take judicial notice of the fact that Mr. Sage for many years and until his death was a resident of New York.

The further criticisms on the return are, we think, without merit. It sufficiently appeared that Rudnick was M. Rudnick and that Blahoski was Joseph Blahoski. The objection that in one case it was said "was in possession," and in the other "had possession," is verbal. It appeared throughout the proceedings that the title was in Russell Sage. This excluded constructive possession. While undoubtedly the return would have been in better form if it had described these persons as in actual possession, the absence of the term "actual" was not material. It is also entirely evident that the description while inartistic, referred to the whole "of the land referred to in said notice."

It follows that the judgment of the trial court must stand.
Affirmed.